# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JESSICA LEIGH SQUIRES,**

        **Plaintiff,**

**v.**                                           **Case No: 6:20-cv-477-LRH**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OF DECISION[1]

Jessica Leigh Squires ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for a period of disability and disability insurance benefits. (Doc. 1). Claimant raises two arguments challenging the Commissioner's final decision, and based on those arguments, requests that the matter be remanded for further administrative proceedings. (Doc. 30, at 18, 32, 39). The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and was decided by the proper legal standards and should therefore be affirmed. (*Id.* at 39). For the reasons stated herein, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

_____

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Docs. 22, 27-29.

## I.    PROCEDURAL HISTORY.

On May 5, 2016, Claimant filed an application for disability insurance benefits, alleging a disability onset date of November 30, 2015.   (R. 94, 204-05).   Claimant's application was denied initially and on reconsideration, and she requested a hearing before an ALJ.   (R. 109-12, 113-19, 120-21).   A hearing was held before the ALJ on January 24, 2019, at which Claimant was represented by an attorney.   (R. 33-82).   Claimant, two witnesses, and a vocational expert ("VE") testified at the hearing.   (*Id.*).

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.   (R. 14-32).   Claimant sought review of the ALJ's decision by the Appeals Council.   (R. 201).   On January 31, 2020, the Appeals Council denied the request for review.   (R. 1-6).   Claimant now seeks review of the final decision of the Commissioner by this Court.   (Doc. 1).

## II.    THE ALJ'S DECISION.[2]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).   (R. 17-27).[3]   The ALJ found that Claimant last met the insured status requirements of the Social Security Act on December 31, 2018.   (R. 19). The ALJ concluded that Claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 30, 2015 through her date last insured of December 31,

---

[2] Upon a review of the record, the Court finds that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   (Doc. 30).   Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy.   *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

2018.   (*Id.*).   The ALJ found that Claimant had the following severe impairments: reflex sympathetic dystrophy/complex regional pain syndrome ("RSDS/CRPS"), tarsal tunnel syndrome, small fiber neuropathy, myofascial pain syndrome, Raynaud's syndrome, Hashimoto's disease, and Grave's disease.   (*Id.*).   The ALJ further found that Claimant had other conditions which do not meet the regulatory definition of severe: a hearing disorder, insomnia, and depression.   (R. 19-20).   The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (R. 20).

The ALJ next found that Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in the Social Security regulations,[4] except that Claimant "cannot climb ladders, ropes or scaffolds, and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl.   She should avoid frequent exposure to temperature extremes and all exposure to dangerous machinery or high, unprotected places."   (*Id.*).

Based on this assessment, and considering the testimony of the VE, the ALJ concluded that Claimant was capable of performing past relevant work as a mental health counselor.   (R. 26).   In addition to finding that Claimant could perform her past relevant work, the ALJ also made alternative findings that Claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.   (R. 26-27).   Specifically, the ALJ found that Claimant could perform the requirements of occupations such as inspector, packager, and order

---

[4] The social security regulations define sedentary work to include:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

clerk.   (R. 27).   Accordingly, the ALJ concluded that Claimant was not disabled from the alleged disability onset date through the date last insured.   (*Id.*).

## III.   STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).   However, even "within this narrowly circumscribed role, [reviewing courts] do not act as automatons.   We must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."   *Id.* (internal citations omitted).

## IV.    ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises two assignments of error: (1) the ALJ failed to apply the correct legal standards with regard to the opinion of Dr. Scott, Claimant's treating physician, and made findings not supported by substantial evidence; and (2) the ALJ's stated reasons for rejecting Claimant's testimony about her pain are not based on the correct legal standards or supported by substantial evidence.   (Doc. 30, at 23, 33).   The Court will begin with Claimant's second assignment of error, as it is dispositive of this appeal.

A claimant may establish disability through his or her own testimony of pain or other subjective symptoms.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).   "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62.   The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence.   *Id*. at 1562.

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 416.929(c)(1).   In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work.   *Id*. § 416.929(c)(1)-(3).   Factors relevant to the ALJ's consideration

regarding a claimant's allegations of pain include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant receives for pain; (6) measures used for pain relief; and (7) other factors pertaining to functional limitations and restrictions to pain.   *Id.* § 416.929(c)(3)(i)–(vii).

Here, the ALJ recounted the hearing testimony from Claimant and two other witnesses as follows:

> The claimant testified that she was diagnosed with reflex sympathetic dystrophy/complex regional pain syndrome (RSD/CRPS) in 2001.  She reported that she had a specialist [in] that area from Tampa, Dr. Anthony Kirkpatrick.  She stated that she "checked in" with the doctor periodically.  However, the claimant said that she had not treated with Dr. Kirkpatrick since November 2017.  She also denied returning to the Mayo Clinic since 2008.  The claimant stated that she was unable to work due to RSD/CRPS, mainly.  She indicated that she has tarsal tunnel syndrome, which she said was related to RSD/CRPS.  She complained of full body pain, including her back, arms and legs.  She stated that tarsal tunnel syndrome, affecting her bilateral feet, diminished her ability to do most everything.  The claimant stated that she suffered from Hashimoto's and Grave's disease, which affect her ability to work.  She reported having hearing-related issues, as a result of other disorders.  She did not appear to have any difficulty hearing me during her hearing.  Although she stated that her general physician recommended further evaluation, she said that it was not her main issue, as she was more concerned with pain.  She reported that she experience[s] heart racing and the need to lie down, causing inability to concentrate due to endocrine issues. The claimant denied ability to sit, stand or walk for more than 10 to 15 minutes.  She estimated she could walk 100 to 200 feet.  She added that she had to constantly alternate positions and sit in a heated pool to take pressure off her back and legs to help relieve symptoms.  The claimant's husband, Todd Squires, also testified at the hearing.  Mr. Squires stated that the claimant stopped working due to pain.  He related that the claimant was not able to stand or sit very long.  He stated that the claimant did very little household chores and did no cooking or grocery shopping.  Ann Walker, the claimant's mother, also testified.  Ms. Walker stated that she saw the claimant at least once a day and assisted with laundry, transporting the claimant to doctor's appointments and running errands.  She stated that she witnessed the claimant having spasms in her legs.

(R. 21).

Then, after reviewing the medical evidence of record, the ALJ stated as follows as it relates

to his evaluation of Claimant's subjective complaints:

> After careful consideration of the evidence, I find that the claimant's medically
> determinable impairments could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements concerning the intensity, persistence
> and limiting effects of these symptoms are not entirely consistent with the medical
> evidence and other evidence in the record for the reasons explained in this decision.

> There is no indication of significant objective findings or extreme symptoms
> consistent with the claimant's testimony.   For example, the claimant underwent an
> EMG study, as well as a nerve conduction study in May 2010.   The results of the
> EMG study [were] normal and nerve conduction study of the right lower [extremity]
> was also normal (Exh. 4F, p. 8).   In September 2016, the claimant underwent a nerve
> conduction study which was consistent with mild bilateral tarsal tunnel syndrome.
> (Exh. 9F, p. 3).   Progress notes refer to MRI of the cervical and thoracic spine, which
> was unremarkable and MRI of the lumbar spine showed mild disc bulging at L4-5
> (Exh. 2F and Exh. 3F).

> The claimant has reported elevated levels of pain and shocks of pain in her feet to
> her doctors.   However, I have not seen reports in the clinical records of inability to sit,
> stand, and walk at the levels reported in her hearing testimony.   Furthermore, her
> examination results do not support these allegations.   The claimant was usually in
> no acute distress and had negative straight leg raise and normal gait and station
> during the vast majority of the examinations.   During her most recent documented
> physical examination, in November 2018, she complained of tingling and numbness,
> but no difficulty with balance.   She denied depression.   She complained of neck
> pain, hand symptoms, lower back pain, wrist pain, knee joint pain, hip joint pain and
> foot pain.   However, she exhibited a normal gait and stance, described as non-
> antalgic.   Her bilateral upper extremity examination was essentially normal.
> Examination of the left lower extremity revealed ankle joint pain and bone pain in
> the foot with full range of motion of the knee.   Her right lower extremity evaluation
> showed ankle joint pain and right foot pain with no effusion in the knee and right
> knee showed full range of motion.   The report shows that the claimant did not appear
> uncomfortable and appeared in no acute distress (Exh. 18F, pp. 2 to 4).

> The reports of no acute distress were consistent with the claimant's presentation at
> her hearing.   Despite her testimony that she could only sit ten to fifteen minutes
> without negative consequences, she sat during the hearing of more than an hour
> without any appearance of negative consequences or even discomfort.   The claimant
> has also admitted activities of daily living including managing her personal care
> needs without assistance (Exh. 8E).   In August 2017, the claimant reported no sitting
> limitations, normal walking, and normal activities of daily living (Exh. 16F, p. 5).
> She has generally had full strength.

(R. 24-25).

In sum, the ALJ provided four reasons for finding Claimant's testimony about her symptoms less than fully persuasive:  (1) the lack of "significant objective findings or extreme symptoms consistent with her testimony," which included several normal examination findings; (2) Claimant's admitted activities of daily living; (3) that Claimant "has generally had full strength;" and (4) the ALJ's observations of Claimant's behavior during the hearing are inconsistent with her testimony about her pain and symptoms.  (*Id.*).   The Court will address each reason in turn.

The ALJ's first reason for discounting Claimant's testimony about her symptoms is the lack of "significant objective findings or extreme symptoms consistent with her testimony."  (R. 24). In support of this reason, the ALJ cited to a number of medical records which he states do not support Claimant's testimony regarding her pain.  (R. 24-25).   Claimant does not take issue with the ALJ's citation to these records, but rather contends that the ALJ's reasoning runs contrary to two Social Security Rulings ("SSRs"):   SSR 16-3p and SSR 03-2p.[5]   (Doc. 30, at 33).

SSR 16-3p provides general guidance concerning consideration of a person's testimony about his or her symptoms, and states that the Commissioner "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."   SSR 16-3p, *available at* 2017 WL 5180304, at \*5 (Oct. 25, 2017). SSR 03-2p addresses the condition RSDS/CRPS specifically, and provides guidance on how the Social Security Administration should evaluate claims for disability involving this condition.

---

[5] SSRs are binding on the SSA, but they are not binding on this Court.   *See Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (internal citation omitted) ("Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.   Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." (citing *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981))).

According to the Ruling, RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity.  SSR 03-2p, *available at* 2003 WL 22399117, at \*1 (Oct. 20, 2003).   In individuals with this syndrome, "the degree of pain reported is out of proportion to the severity of the injury sustained by the individual."   *Id.*   SSR 03-2p instructs that "conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved."   *Id.*, at \*5; *see also Brooks v. Barnhart*, 428 F. Supp. 2d 1189, 1191-92 (N.D. Ala. 2006) (summarizing SSR 03-2p).   Thus, SSR 03-2p "repeatedly reminds reviewing officers to carefully consider 'the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'"   *Bernstein v. Astrue*, No. 3:09-cv-17-J-34MCR, 2010 WL 746491, at \*8 (M.D. Fla. Mar. 3, 2010) (quoting SSR 03-2p).   Moreover, the signs and symptoms of CRPS may not be "present continuously" or "may be present at one examination and not appear in another."   SSR 03-2p, 2003 WL 22399117, at \*4.   Accordingly, as one court in this District has recognized, RSDS/CRPS is a disease for which "a diagnosis necessarily hinges on a plaintiff's subjective symptoms," and where "objective findings can be minimal," therefore "the proper evaluation of plaintiff's subjective pain testimony is crucial."   *Bernstein*, 2010 WL 746491, at \*8 (citing *Hunt v. Astrue*, No. EDCV 08-00299-MAN, 2009 WL 1519543, at \*6, 7-9 (C.D. Cal. May 29, 2009)).

Following the guidance of SSR 03-2p, courts in this Circuit have found reversible error when an ALJ relies on the lack of objective medical evidence to discount the subjective complaints of a claimant with RSDS/CRPS.   *See, e.g.*, *Volk v. Astrue*, No. 3:11-cv-533-J-TEM, 2012 WL 4466480, at \*5 (M.D. Fla. Sept. 27, 2012) (internal citations omitted) ("RSD/CRPS is a disease diagnosed primarily based on subjective complaints, and the absence of 'objective medical evidence,' such as

x-rays or laboratory tests, cannot be cited as a legitimate basis for rejecting plaintiff's subjective pain and limitations testimony."); *Graves v. Comm'r of Soc. Sec. Admin.*, No. 3:11-cv-667-J-MCR, 2012 WL 3715228, at *7 (M.D. Fla. Aug. 28, 2012) (finding error where ALJ concluded that the objective medical evidence of record – or lack thereof – provided a basis for discounting subjective pain testimony of claimant with RSDS/CRPS); *Bernstein*, 2010 WL 746491, at *8 (stating, in the context of RSD/CRPS, that "[t]he ALJ is not free to reject Plaintiff's statements about the intensity and persistence of her pain based solely on a lack of objective medical evidence.") (citing prior SSR 96-7p(4), which was superseded by SSR 16-3p).  *See also Channell v. Kijakazi*, No. 2:18-cv-1059-JTA, 2021 WL 3131669, at *7 (M.D. Ala. July 23, 2021) (finding error where the ALJ held that the claimant's testimony about his symptoms was inconsistent with the evidence in the record and noting that a "patient's disproportionate, but nevertheless real, perception of pain is the hallmark of [RSDS/CRPS]" (quoting *Brooks*, 428 F. Supp. 2d at 1193)).

Additionally, other Courts have found reversible error where an ALJ failed to specifically discuss a claimant's impairment of RSDS/CRPS during the analysis of Claimant's credibility, or where the ALJ fails to cite to or address SSR 03-2p even where, such as here, the ALJ finds the impairment to be severe at Step Two of the sequential evaluation process, or provides other reasons for discounting the claimant's testimony.  *See Mills v. Comm'r of Soc. Sec.*, No. 1:16 CV 1190, 2017 WL 4083149, at *6 (N.D. Ohio July 27, 2017), *report and recommendation adopted*, No. 16 CV 1190, 2017 WL 4077142 (N.D. Ohio Sept. 14, 2017) ("[A]lthough the ALJ at Step Two found that CRPS was a severe impairment, there is no indication at any subsequent step that SSR 03-2p was ever cited or used in any evaluation or finding. . . . Of greater importance, there was no specific discussion of Mills's CRPS in light of SSR 03-2p during the analysis of her credibility.   In fact, the primary reasons given for discounting her credibility were 'medical evidence of record' and

'claimant's activities of daily living.'"); *Welch v. Colvin*, No. 3:14cv388-DPJ-LRA, 2015 WL 4940666, at *6 (S.D. Miss. Aug. 19, 2015) (alteration in original) ("Although the ALJ articulates other bases for his adverse credibility determination, it is not clear that the ALJ carefully considered 'the effects of pain and its treatment on [Plaintiff's] capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'") (quoting SSR 03-2p); *Carroll v. Berryhill*, No. 3:15-cv-503-GMB, 2017 WL 559581, at *5 (M.D. Ala. Feb. 10, 2017) (internal citations omitted) ("Because the ALJ here neither addressed Carroll's CRPS in a meaningful way, nor cited to Ruling 03-2p, the Court is uncertain whether the ALJ was aware of the characteristics of this unique clinical syndrome and the Administration's policy for evaluating claims based on [RSDS/CRPS].").

Here, while the ALJ references SSR 16-3p in the decision, nowhere does he cite to or discuss SSR 03-2p. *See* R. 17-27. Moreover, the ALJ does not specifically discuss Claimant's severe impairment of RSDS/CRPS in his evaluation of Claimant's subjective testimony. *See* R. 24-25. Rather, as discussed above, the ALJ focuses in large part on objective medical records which he found to be at odds with Claimant's reported levels of pain and resulting symptoms. (*Id.*). However, the ALJ's statement that "there is no indication of significant objective findings or extreme symptoms consistent with the claimant's testimony," and his reliance on objective findings to discredit Claimant's testimony, does not take into consideration the "progressive" and "transient" nature of her unique impairment. *See Welch*, 2015 WL 4940666, at *5. Nor does the ALJ's credibility determination grapple with the fact that "conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings." SSR 03-2p; *see* R. 24-25.

Because of the ALJ's failure to engage with SSR 03-2p at any point in the decision—and specifically in reference to his evaluation of Claimant's subjective complaints—the Court cannot conclude that the ALJ's finding on this point is supported by substantial evidence. *See Welch*, 2015 WL 4940666, at *5; *Carroll*, 2017 WL 559581, at *4-5 (finding that the ALJ did not meaningfully address claimant's RSDS/CRPS in accordance with SSR 03-2p even where the ALJ found the disease was a severe impairment at Step Two and included a "detailed recounting of the medical records and [claimant's] reported symptoms," because the ALJ did not apply or discuss SSR 03-2p in the credibility determination); *Volk*, 2012 WL 4466480, at *5 ("Because the ALJ neither addressed Plaintiff's RSDS specifically nor cited to SSR 03-2p, the Court is uncertain whether the ALJ was aware of the characteristics of this "unique clinical syndrome" and the Administration's policy for evaluating claims based on RSDS. Accordingly, the Court finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards." (citing SSR 03-2p)). Thus, in consideration of the persuasive authority cited above, the Court finds that the ALJ's first reason for discounting Claimant's subjective testimony is not supported by substantial evidence.[6]

The ALJ's second stated reason for discounting Claimant's testimony about her pain and symptoms was based on the ALJ's reliance on Claimant's activities of daily living. On this point, the ALJ stated that Claimant has "admitted activities of daily living including managing her personal care needs without assistance," and that in August 2017, Claimant "reported no sitting limitations, normal waking, and normal activities of daily living." (R. 25). However, the ALJ nowhere

---

[6] This same body of law applies to the ALJ's third stated reason – that Claimant "has generally had full strength." (R. 25). The ALJ does not cite to any record evidence in support of this statement, but elsewhere in his decision, the ALJ notes medical records which indicate that Claimant exhibited normal strength. *See, e.g.*, R. 23 (citing Ex. 12F, p. 8-11); R. 24 (citing Ex. 17F, p. 2). However, as discussed above, the ALJ's reliance on objective evidence, without consideration of SSR 03-2p, is error. Thus, the ALJ's third reason is not supported by substantial evidence.

expands on these findings, or references any specific daily activities that he believes bear on the credibility of Claimant's pain testimony.   Rather, as to the Claimant's "personal care needs," the ALJ merely cites generally to a Function Report completed by Claimant.   (*Id.*) (citing Ex. 8E). While Claimant checked a box on the second page of this report indicating "no problem with personal care," (*see* R. 253), the ALJ does not cite to this page or notation, and it is not the Court's role to assume that this is what the ALJ meant.   *See Phillips*, 357 F.3d at 1240 n.8 (alteration in original) (stating that the district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" (quoting *Bloodsworth*, 703 F.2d at 1239)).   Moreover, the Function Report does not provide any details as to what "personal care needs" Claimant is able to perform, and Claimant indicates throughout this same report that due to her pain, she has difficulty with and/or is unable to perform a variety of daily living activities, such as driving, preparing her own meals, doing house and yard work, shopping, and paying bills.   (R. 253-55).   The ALJ does not address any of these other noted limitations in his decision.

Because the ALJ has failed to identify any specific activities which he believes run contrary to Claimant's subjective testimony, and because the general citation to the Function Report is itself vague and contradictory, the Court cannot say that this reason is supported by substantial evidence. *Cf. Dicks v. Saul*, No. 3:18-cv-1397-J-JRK, 2020 WL 1130346, at *7 (M.D. Fla. Mar. 9, 2020) (affirming ALJ's assessment of claimant's subjective complaints where ALJ expressly noted that claimant was independent in her personal care and grooming, could drive a car, could perform household chores and cooking, could shop for groceries, and manage money, and where those findings were supported by the claimant's testimony and a detailed function report); *Barnett v. Astrue*, No. 6:11-cv-00829-ACC, 2012 WL 1560646, at *12-13 (M.D. Fla. Apr. 13, 2012), *report and recommendation adopted sub nom. Barnett v. Comm'r of Soc. Sec.*, No. 6:11-cv-829-Orl-

22SPC, 2012 WL 1560643 (M.D. Fla. May 2, 2012) (finding that substantial evidence supported ALJ's credibility determination where ALJ relied on specific, detailed accounts of claimant's daily activities, which included loading the dishwasher, doing laundry, preparing meals, and the ability to do some yard work, including pulling weeds).

The ALJ's second finding on this point, that in August 2017, Claimant "reported no sitting limitations, normal walking, and normal activities of daily living" fares no better.   To support this statement, the ALJ cites to an excerpt of an August 29, 2017 visit to Daytona Beach Rheumatology. (R. 590).   However, it is again unclear from the ALJ's general citation to this record what constitutes "normal" with respect to Claimant's abilities to walk and engage in activities of daily living, and the ALJ gives no further explanation beyond his citation to the record.   *See* R. 25 (citing Exhibit 16F, p.5).   Moreover, as discussed above, Claimant's impairment of RSDS/CRPS is characterized by transient objective findings.   SSR 03-2p.   And indeed, the record indicates that in a later visit to the same medical practice, Claimant cited walking and activities of daily living as functional limitations and reported that walking exacerbated her pain.   (R. 600).   Because the ALJ's reasoning with respect to Claimant's activities of daily living is vague and conclusory, the Court is unable to identify any evidence to support this finding, and therefore the ALJ's findings are not supported by substantial evidence.

This brings the Court to the ALJ's final reason for discounting Claimant's testimony.   The ALJ observed Claimant at the hearing, during which she sat for "more than an hour without any appearance of negative consequences or even discomfort."   (R. 25).   The ALJ found that his observations of Claimant contradicted Claimant's testimony that "she could only sit ten to fifteen minutes without negative consequences."   (*Id.*).   Although "[t]he ALJ is not prohibited 'from considering the claimant's appearance and demeanor during the hearing,'" this cannot be the only

basis upon which the ALJ rejects a claimant's pain testimony. *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (quoting *Norris v. Heckler,* 760 F.2d 1154, 1158 (11th Cir. 1985) ("We do not accept an ALJ's mere reliance on his observation of a claimant during a hearing as the only basis upon which to reject a claimant's reference to pain.")); *see also Craft v. Saul*, No. 8:19-cv-324-T-30TGW, 2020 WL 1049253, at *6 (M.D. Fla. Feb. 18, 2020) (internal citations omitted) ("[T]he law judge is not prohibited from considering the claimant's appearance and demeanor during the hearing, provided it is not the sole basis for discrediting the plaintiff's testimony."); *cf. Markovich v. Astrue*, No. 8:09-cv-1376-T-30TBM, 2010 WL 2508851, at *7, n. 7 (M.D. Fla. June 2, 2010) (giving little weight to the ALJ's observations of the plaintiff's ability to bend, sit and stand at the hearing because it is "doubtful" whether "these one-time observations reveal anything significant about Plaintiff's credibility.").    As discussed in this Order, the other reasons the ALJ provided as a basis to discount Claimant's subjective testimony were not supported by substantial evidence.    This would leave the ALJ's observations of Claimant as the "only basis" upon which to discount Claimant's testimony, which is prohibited in this Circuit.    Accordingly, this fourth and final reason is also not supported by substantial evidence.

Having found that each of the ALJ's stated reasons for rejecting Claimant's subjective testimony were not supported by substantial evidence, the Court finds that the ALJ committed reversible error, and will remand this case for further administrative proceedings.[7]    Given that reversal is necessary on the bases discussed herein, the Court declines to address Claimant's remaining arguments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the

---

[7] In remanding this matter for further administrative proceedings, the Court is not suggesting that the ALJ reach any particular conclusion.    Rather, remand is necessary so that the ALJ can properly address Claimant's subjective testimony about her pain and symptoms, and in particular apply the analysis set forth in SSR 03-2p, regardless of the conclusion ultimately reached.

ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to analyze other issues when case must be reversed due to other dispositive errors).

**V.    CONCLUSION.**

Based on the foregoing, it is **ORDERED** that:

1.    The Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk is **DIRECTED** to enter judgment in favor of Claimant and against the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on September 15, 2021.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record